UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BETTINA BONTERRE,

                              Plaintiff,

        –against–

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF SANITATION,
ROBERT WEISS, and GASPAR MORENO,

                              Defendants.

**OPINION AND ORDER**

18 Civ. 745 (ER)

RAMOS, D.J.:

        Bettina Bonterre has brought suit against the City of New York, its Department of

Sanitation ("DSNY"), and DSNY employees Robert Weiss and Gaspar Moreno, alleging

violations of Title VII the Civil Rights Act of 1964, the New York State Human Rights Law

("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and New York common

law.[1]  Before the Court is Defendants' motion for judgment on the pleadings on all claims

pursuant to Fed. R. Civ. P. 12(c).  For the reasons discussed, Defendants' motion is GRANTED

in part and DENIED in part.

## I.     BACKGROUND

### A.  Factual Background

        At all relevant times, Bonterre was a Clerical Assistant employed by the DSNY.  ¶ 22.[2]

She alleges several instances of sexual harassment and assault throughout her employment.

---

[1] *See* 42 U.S.C. §§ 2000e, *et. seq.*, N.Y. Exec. Law § 296, *et. seq.*, N.Y. Admin. Code § 8-107, *et. seq.*, respectively.
Bonterre's common law claims are for negligent and intentional infliction of emotional distress ("NIED" and
"IIED," respectively).

[2] Citations to "¶ _" refer to the Complaint., Doc. 1.  All facts taken from the complaint are assumed to be true for
this motion.

Bonterre alleges that when she began her employment in 1997, she arrived at her workplace—a garage depot in the Bronx—to find pornography openly playing.  ¶ 14.  She further alleges that, in 2009, she unknowingly ingested a "date rape" drug that was placed in her drink at a gathering among her co-workers for a supervisor's birthday.  ¶ 15.  Following her ingestion of the drug, she was assaulted and raped by her co-workers and supervisors.  ¶ 16.  She subsequently "complained to upper management" about this incident.  ¶ 17.  However, she alleges that, after lodging such complaints, she was assaulted by a group of co-workers and supervisors in a DSNY parking lot, which included one worker shoving his hand down her pants.  ¶ 18.  She alleges that after this incident, the City and DSNY "failed to engage in any meaningful interactive process," and the responsible parties remained DSNY employees.  ¶ 20.  This workplace environment continued following her complaints, but "abated temporarily" when she was reassigned to another location.  ¶ 21.

Bonterre was relocated to a garage location in upper Manhattan in February 2014.  ¶¶ 11, 22.  Weiss was her supervisor at this location.  ¶ 24.  She alleges that she was subjected to a hostile work environment at this location, citing the following patterns of conduct:  "offensive, sexually-explicit comments by co-workers, including comments about the size of her breasts," "daily conversations of crude and explicit nature using terms focused and referring to Ms. Bonterre's vagina, breasts, anus, buttocks, lips and legs," "making suggestions to go to the 'Deegan cheater's motel,'" and that "garage workers frequently and habitually physically touch[ed] Ms. Bonterre as they pass[ed] the Plaintiff's desk."  ¶ 25.  She alleges that the above-mentioned hostile work environment was generally perpetuated "[i]n the presence of [Weiss]," and that he was present for "substantially all of the sexually-based offenses."  ¶¶ 25, 28.

Bonterre also alleges two more specific incidents under Weiss' supervision.  First, in October 2016, she states that Moreno intentionally sliced her pants with a razor in Weiss' presence.  ¶ 26.  Second, and also in Weiss' presence, Moreno "deliberately shoved the handle of a broomstick deeply into Ms. Bonterre's clothed buttocks while callously laughing."  ¶ 27.

Bonterre alleges that "despite [her] complaints," Weiss has taken no action in response to the sexually-based offenses, and that Defendants have allowed this verbal and physical harassment to continue on a regular basis.  ¶¶ 28–29.  She further alleges that "when she voiced her protests and complaints, she was met with inaction and escalated instances of harassment."  ¶ 30.  Bonterre filed an EEOC charge on March 20, 2017 and received a Right to Sue letter on October 31, 2017.  ¶¶ 9–10.  She alleges that these incidents have caused her emotional distress and anxiety.  ¶ 31.

### B.  Procedural History

Bonterre filed this case on January 26, 2018.  Defendants answered the complaint on April 2, 2018.  Doc. 18.  Defendants moved for judgment on the pleadings on January 26, 2021. Doc. 27.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Under Rule 12(c), courts apply the same standard as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  Judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In considering a Rule 12(c) motion, courts should assume all the well pleaded factual allegations

in the non-moving party's pleadings to be true.  *Brown v. De Fillipis*, 717 F. Supp. 172, 178

(S.D.N.Y. 1989).  When deciding a motion for judgment on the pleadings, a court may only

consider "the pleadings and exhibits attached thereto, statements or documents incorporated by

reference in the pleadings, matters subject to judicial notice, and documents submitted by the

moving party, so long as such documents either are in the possession of the party opposing the

motion or were relied upon by that party in its pleadings."  *See Prentice v. Apfel*, 11 F. Supp. 2d

420, 424 (S.D.N.Y. 1998) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.

1993)).

## III.   DISCUSSION

### A.  Statute of Limitations

Defendants first make several timeliness arguments.  Regarding the hostile work

environment and retaliation claims, they argue that any allegations based on events occurring

prior to May 24, 2016 are time-barred under Title VII, and that any allegations prior to January

26, 2015 are time-barred under NYSHRL and NYCHRL.  They also argue that the common law

claims are time-barred to the extent they are predicated on any conduct arising before January

26, 2017 for the IIED claim, and before October 28, 2016 for the NIED claim.[3]  Accordingly,

Defendants argue that the only specifically dated, timely-alleged incidents in the complaint are

the razor incident and the broomstick incident (which the parties agree are timely-alleged).

In Bonterre's opposition, she conceded that the IIED and NIED claims were time-barred

and withdrew them.  The Court therefore grants Defendants' motion regarding the IIED and

NIED claims.   Bonterre also conceded that the 1997 pornography incident was not sufficiently

---

[3] Defendants also argued that these claims were barred for failure to file a notice of claim on the City within ninety days after the claim arose pursuant to N.Y. Gen. Mun. Law § 50–i.

linked to the rest of her claims to be actionable.  The parties differ, however as to how to treat the sexual assault allegations from 2009.

Bonterre has argued that all allegations from 2009 are timely and support her hostile work environment claim pursuant to the continuing violations doctrine.  Under this doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012).  Discrete discriminatory acts, such as "termination, failure to promote, denial of transfer or refusal to hire," are not timely under the doctrine if they occurred outside of the limitations period.  *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  However, because the "very nature" of hostile work environment claims involves repeated conduct, a plaintiff need only allege that one incident pursuant to the unlawful practice occurred within the limitations period.  *Id.* at 115–118.  Nevertheless, "the timely incident must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment."  *Sanderson v. N.Y. State Elec. & Gas Corp*., 560 F.App'x. 88, 91 (2d Cir. 2014).  To assess whether incidents are part of the same hostile work environment, courts have considered factors such as "(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and ([4]) whether the employer took any intervening remedial action."  *Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, No. 15 Civ. 3363 (NSR), 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018).

The 2009 incidents are insufficiently related to the timely-alleged instances of harassment to make them timely, even under the continuing violations doctrine.  First, Bonterre does not

allege that Weiss or Gaspar were involved in the 2009 incidents, nor does she allege that any of the individuals who *were* involved have participated in the pattern of discrimination in her current workplace.  These discrepancies weigh against a finding of relatedness.  *See Dziedzic v. State University of N.Y. at Oswego*, 648 F.App'x 125, 128 (2d Cir. 2016) (affirming summary judgment for employer when the timely-alleged sexual joke was made by different co-workers in a different section of plaintiff's department, and was therefore not related to other, untimely events); *see also Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 1272617, at 14 n.14 (S.D.N.Y. Mar. 17, 2020) (continuing violations doctrine inapplicable when untimely incidents occurred years before the timely incidents and involved different individuals). Similarly, Bonterre alleges that the inappropriate environment existing in 2009 "abated temporarily" following her reassignment to another location at an unidentified date.[4]  ¶ 21.  Such "intervening action" by her employer further suggests that the incidents are not related.  *See Morgan*, 536 U.S. at 118.  Finally, Bonterre alleges no specific actions that occurred between the 2009 incidents and her 2014 reassignment to her current workplace, aside from the conclusory statement that this "inappropriate environment was sustained and continued" despite her protests. ¶ 21.  While there is no bright-line rule regarding temporal gaps between incidents, it is "less plausible" that such incidents are related when there are gaps of one year or more.  *See McGullam v. Cedar Graphics, Inc.*, 608 F.3d 70, 78 (2d Cir. 2010) (finding it less plausible that incidents were related when there was a nearly one-year gap between them).  Thus, despite Bonterre's argument that Weiss was "aware of" the 2009 incidents, *see* ¶ 23, she has not plausibly alleged that these incidents were part of the same pattern of harassment as the razor and broomstick incidents.

---

[4] While it is not completely clear from the face of the Complaint, this reassignment appears to have occurred prior to her February 2014 reassignment to her current workplace.

Bonterre also alleged several general patterns of inappropriate workplace behavior occurring after she was transferred to her current garage. *See* ¶ 25. These allegations are undated, though Bonterre's opposition brief states that issues such as sexually charged comments took place "both before, and during, the statutory [limitations] period." Doc. 29 at 6. Because the expiration of the statute of limitations is an affirmative defense that should be granted on a motion to dismiss "*only* if it is clear on the face of the complaint that the statute of limitations has run," the Court cannot conclude that allegations contained in ¶ 25—to the extent they otherwise state a claim—are time-barred at this juncture. *Goodwine v. City of New York*, No. 15 Civ. 2868 (JMF), 2016 WL 3017398, at *5 (S.D.N.Y. May 23, 2016) (quoting *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014)); *see also Taylor v. City of New York*, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016) ("For the claims that are timely and those that are undated, the Court will consider whether they state a claim on the merits."). However, the sexual assault allegations from 2009, and any earlier allegations, may be considered by the Court only as background; they are not themselves actionable.

## B. Hostile Work Environment Claims

To state a hostile work environment claim, a plaintiff must allege that their workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015). A plaintiff "need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010). A single incident of harassment is ordinarily insufficient to state a

hostile work environment claim, although it is possible if the incident is "extraordinarily severe." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  The Court must consider "the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse" to determine whether the "severe and pervasive" threshold is met.  *Id.*  The plaintiff must also allege that a specific basis exists on which to impute that conduct to the employer.  *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998).

While the Title VII test applies to claims under the NYSHRL, *see Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004), claims under the NYCHRL are to be considered independently and construed more broadly in favor of plaintiffs alleging discrimination.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Under the NYCHRL, a plaintiff must only allege that she was treated less well than other employees because of her protected status, and that discriminatory intent was a motivating factor.  *Id.*; *see also Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 445 (1st Dep't 2013).

Defendants argue that the razor and broomstick incidents were insufficiently severe or pervasive to state a hostile work environment claim, citing several cases in which allegations based on inappropriate touching or the violation of personal space were dismissed as insufficient. They also allege that the allegations of general inappropriate behavior set forth in ¶ 25 are too conclusory to state a claim.  While it is a close call, the Court finds that the broomstick incident—either by itself or in conjunction with her other timely allegations—could provide the basis for a hostile work environment claim.

In this Circuit, courts determining whether a single incident of sexually-motivated touching is sufficient to state a hostile work environment claim have focused on the degree to which the contact was intentional and/or physically intrusive.  *See Guzman v. Macy's Retail*

*Holdings, Inc.*, No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *5 (S.D.N.Y. Mar. 29, 2010) (motion to dismiss hostile work environment claim denied when plaintiff alleged that defendant "pressed—as opposed to brushed—his genitals against her" after she asked him to stop); *see also Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) (distinguishing between "[i]ntentionally grabbing, squeezing, or otherwise feeling an intimate part of another's body" and merely "brushing against it" for the purposes of a single actionable hostile work environment incident); *cf. Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012) ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.") (citation omitted).  If the contact is intentional and sufficiently invasive or intrusive, a plaintiff may state a claim based on one incident of inappropriate contact.

Bonterre alleges that Moreno "deliberately shoved the handle of a broomstick deeply into Ms. Bonterre's clothed buttocks while callously laughing."  ¶ 27.  Viewed in the light most favorable to Bonterre, this conduct is comparably severe to several other incidents for which motions to dismiss or for summary judgment on hostile work environment claims were denied, as it involves intentional contact with an intimate body part.  In *Guzman*, the Court denied the defendant's motion to dismiss when the defendant had allegedly "rubbed his genitals against [the plaintiff's] body," reasoning that the nature of such contact was "distinguishable from others in which the single incident of contact was incidental and fleeting."  2010 WL 1222044, at *4–5.  Similarly, several courts in this Circuit have found incidents of intentionally squeezing a plaintiff's breast or slapping their buttocks sufficient to state a claim for a hostile work environment if done with the requisite intent.  *See Reid*, 876 F. Supp. 2d 176 at 185 (allegation that a defendant "grabbed and squeezed" one of Plaintiff's breasts sufficient to deny motion to dismiss); *see also Domingues v. Barton Chevrolet Cadillac*, No. 18 Civ. 7772 (PMH), 2021 WL

637016, at *5 (S.D.N.Y. Feb. 17, 2021) (allegation that defendant grabbed plaintiff's breast stated a hostile work environment claim); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 521 (S.D.N.Y. 2000) (allegations that defendant "wrapped his arms around [the plaintiff], grabbed her in a 'bear hug,' made a grunting sound, and slapped her left buttock three times" stated a hostile work environment claim because such contact was "neither harmless nor accidental."). Bonterre's allegations that the broomstick was "shoved . . . deeply" while Moreno was "callously laughing" certainly raise a similar inference that the contact was intrusive, and was neither harmless nor accidental.

The cases cited by Defendants are not to the contrary. Rather, defendants cite only cases describing conduct that is more "incidental and fleeting." *See Guzman*, 2010 WL 1222044, at *5. For example, in *Holohan v. Newmark & Co. Real Estate, Inc.*, the plaintiff alleged that "[the defendant's] hand brushed against her thigh and that she moved away from him in response," in addition to several other sexually charged comments. *See* No. 18 Civ. 6275 (AJN), 2019 WL 4743883, at *1 (S.D.N.Y. Sept. 16, 2019). The court distinguished this incident from a "forceful grope" or other similar behavior that might be sufficient to state a claim. *Id.* at *3. *See also Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *11–12 (S.D.N.Y. Feb. 5, 2016) (allegations that defendant "once poked Plaintiff in the back" insufficiently severe and pervasive)[5]; *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *11 (S.D.N.Y. Jan. 20, 2015) (allegations that supervisor would place her hands on plaintiff's shoulder and press her breasts against him did not raise a sufficient inference that the contact was a sexual advance, was sufficiently frequent, or occurred despite his objections). Finally, Defendants cite *Anderson v.*

---

[5] Defendants, perhaps intending to analogize to *Moore*, attempt recast Bonterre's allegations as merely being "poked in the buttocks with a broomstick." Doc. 28 at 14. However, at this stage, the Court must view the allegations in the light most favorable to Bonterre, who describes a more severe, violent contact.

*Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012).  In *Anderson*, the *pro se* plaintiff's allegations that his supervisor would "come around my cube on occasions and place her vagina literally on my left shoulder or inches from my face" were insufficient to state a hostile work environment claim.  *Id.*  However, the court read this allegation in conjunction with a similar allegation that the plaintiff's supervisor would "at times come to my cube and position herself i[n] such a way that her vagina is practically sitting on my left shoulder, or would stand so close to me that if I was to turn to my left my nose would be directly in front of the bottom of her stomach."  *Id.*  On this basis, the court concluded that the plaintiff had only alleged that his supervisor "stood too close to [him,]" and thus did not state a hostile work environment claim. *Id.*

Defendants have also argued that there is no plausible nexus between the razor incident and Bonterre's gender.  However, the Court's determination does not rest on razor incident, as the broomstick incident—which Defendants have not argued was unrelated to Bonterre's gender—is by itself sufficient to state a claim.  Regarding the broomstick incident, the Court agrees that such unwanted contact with an intimate body part could certainly raise an inference of being motivated by gender.  *See, e.g.*, *Swiderski v. Urban Outfitters, Inc.*, No. 14 Civ. 6307 (JPO), 2017 WL 6502221, at *5–6 (S.D.N.Y. Dec. 18, 2017) (issues of fact existed regarding whether allegations of invasions of personal space and intimate patdowns were motivated by gender); *see also Redd*, 678 F.3d at 179 (reasonable jury could infer that grabbing plaintiff's breasts was motivated by gender).  In any event, the Complaint as a whole raises a plausible inference that her gender was a motivating factor for both of these incidents, when read in conjunction with Bonterre's allegations that other employees under Weiss' supervision engaged in "daily" conversations about her "vagina, breasts, anus, buttocks, lips and legs."  ¶ 25.

Defendants have correctly argued that Bonterre's allegations in ¶ 25—which alleges the existence of these daily conversations and several other general patterns of offensive behavior in her workplace—are too vague to state a claim for hostile work environment conduct on their own. However, these allegations nevertheless lend plausibility to her allegation that the razor and broomstick incidents were part of a pattern of sexually motivated behavior toward her.[6] *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (considering allegations that were not actionable by themselves, but that supported an inference of discriminatory intent regarding other actionable conduct).

While discovery may well show that the broomstick incident was more "incidental and fleeting" than is suggested by Bonterre's Complaint, she has alleged sufficiently severe conduct to survive a Rule 12(c) motion and thus states a Title VII hostile work environment claim. Accordingly, Bonterre therefore also states a claim for hostile work environment under NYSHRL, which is subject to the same standard, and the NYCHRL, which is construed even more liberally in favor of plaintiffs. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (interpretations of state and federal civil rights law are a "*floor* below which the City's Human Rights law cannot fall.") (emphasis in original) (quotation marks and citation omitted).

### C. Retaliation Claims

A prima facie claim for retaliation under Title VII and the NYSHRL requires that a plaintiff establish "(1) participation in a protected activity; (2) that the defendant knew of the

---

[6] The razor allegation and these background facts also provide additional support for the Court's conclusion that Bonterre has plausibly alleged a "severe or pervasive" hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (a court must consider all the circumstances to assess whether an environment was sufficiently hostile); *see also Domingues*, 2021 WL 637016, at *5 (noting, in the summary judgment context, that "even if a jury concluded that the [breast-grabbing incident] in isolation was not 'extraordinarily severe,' it could find that there was a series of incidents [including the breast-grabbing incident] which created an objectively hostile work environment.").

protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316.  However, at the pleading stage, a plaintiff must only allege facts that provide plausible support to the prima facie requirements.  *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F.App'x 575, 581 (2d Cir. 2020).  To state a claim under the NYCHRL, a plaintiff must plausibly allege that "(1) [the plaintiff] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [the plaintiff]; and (3) a causal connection exists between the protected activity and the adverse action."  *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52 (1st Dep't 2012).

Defendants argue that Bonterre's retaliation claims are insufficient on the following bases:  (1) she failed to allege that she engaged in protected activity; (2) she failed to allege that Defendants engaged in activity which would have deterred a reasonable person from engaging in protected activity; and (3) she failed to allege a causal connection between any protected activity and any retaliatory acts.  The Court agrees that Bonterre has failed to state a claim for retaliation.

In the Complaint, Bonterre alleges that "[d]espite Ms. Bonterre's complaints and [Weiss's] presence throughout substantially all of the sexually-based offenses, [Weiss] has taken no action," and that "[w]hen Plaintiff voiced her protests and complaints, she was met with inaction and escalated instances of harassment."  ¶¶ 28, 30.  She also alleges that she filed an EEOC complaint on March 20, 2017.  ¶ 9.[7]

While Bonterre's undated "complaints" *may* have constituted protected activity, as presently alleged they are too vague to provide a basis for a retaliation claim, with the exception of the March 2017 EEOC complaint (which Defendants concede was protected activity).  *See*

---

[7] Bonterre also alleges that she "complained to upper management" about the 2009 date rape drug incident, which led to further retaliation shortly following her report.  ¶¶ 17–18.  However, as discussed above, the 2009 allegations are time-barred.  Bonterre did not rely on this report to her supervisors in her opposition brief, or otherwise argue that this retaliation allegation was timely.

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14 Civ. 2065 (AJN), 2015 WL

13654007, at *15 (S.D.N.Y. Mar. 26, 2015) (allegations insufficient when plaintiff "states that

she complained about her perceived age discrimination, but she does not allege to whom she

complained or when these complaints were made"); *see also Herling v. N.Y.C. Dep't of Educ.*,

No. 13 Civ. 5287, 2014 WL 1621966, at *9 (E.D.N.Y. Apr. 23, 2014) (allegations that plaintiff

"regularly complained" of unlawful discrimination and retaliation did not state a claim without

specifying when the complaints were lodged, or to whom).  While Bonterre argues in her

opposition brief that these complaints were made to her supervisors, this is not clearly set forth in

the Complaint itself.  Moreover, even if Bonterre had alleged to whom they were made (or

sufficient facts about what the complaints consisted of), the Complaint does not specify *when*

such complaints occurred.  Thus, the Court is without a basis to infer whether any actionable

retaliatory behavior followed these complaints and—if so—whether such behavior was plausibly

caused by her activity.  To be sure, Bonterre alleges that her "protests and complaints" were "met

with inaction and escalated instances of harassment."  ¶¶ 28, 30.  But without any details about

what those escalated instances of harassment consisted of, this statement is too conclusory to

provide a basis for a retaliation claim.

Similarly, while Bonterre's EEOC complaint surely constituted protected activity, she

alleges that this complaint was filed on March 20, 2017.  ¶ 9.  Bonterre alleges no specific

conduct *after* this date, as she alleges the razor incident occurred in October 2016 and the

broomstick incident took place on February 11, 2017.  ¶¶ 26–27.  As discussed above, threadbare

allegations of "escalated instances of harassment," without more, are insufficient to state a claim.

Thus, while Bonterre has adequately alleged that she engaged in protected activity through filing

her EEOC complaint, she has not alleged facts that plausibly support any actionable retaliatory

conduct after this activity, or an inference that any such conduct was caused by her EEOC complaint.  Accordingly, Bonterre fails to state a claim for retaliation under Title VII, NYSHRL, or NYCHRL.[8]

### D.  Individual Liability

Bonterre has named all defendants in all of her causes of action.  Defendants raise several challenges to their individual liability.

#### i.      Individual Liability under Title VII

Defendants have argued that all Title VII claims against Weiss and Moreno must be dismissed, as Title VII does not provide for individual liability.  *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004).  Bonterre did not respond to this argument in her opposition brief, and the Court agrees that Bonterre fails to state a Title VII claim against Weiss and Moreno individually on this basis.  All Title VII claims against the individual defendants are therefore dismissed.

#### ii.     Aiding and Abetting Claims

N.Y. Exec. Law § 296(6) makes it unlawful for any person—regardless of supervisor status—to "aid, abet, incite, compel or coerce" any actionable discriminatory act.  To state a claim under § 296(6), a plaintiff must allege that a defendant "actually participated in the alleged discriminatory acts."  *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 328 (2004) (internal quotation marks and alterations omitted).  Aiding and abetting claims under the NYCHRL are

---

[8] While NYCHRL requires only a showing of an action that "disadvantaged [Bonterre]," as opposed to one that would reasonably deter an employee from engaging in protected conduct, she still must plausibly allege that a "causal connection" exists between her protected activity and such action.  *Fletcher*, 99 A.D.3d at 52.  This she has not done.

analyzed under the same standard.  *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012).[9]

Defendants argue that because Weiss and Moreno are the "alleged principal actors" responsible for the broomstick incident, they cannot be held responsible for "aiding and abetting their own conduct."  Doc. 30 at 9 (citing *Boonmalert v. City of New York*, 721 F.App'x 29, 34 (2d Cir. 2018)); *see also* Doc. 28 at 23.  Bonterre argues that the individual defendants "assisted each other and the entity-employer, DSNY, in creating the discriminatory hostile work environment," which is cognizable under § 296(6).  Doc. 29 at 15.

Bonterre has the better argument.  There has been some disagreement among district courts in this circuit regarding the extent to which an individual may be held liable under § 296(6) for conduct for which they are also the principal actor.  *See Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *18 (S.D.N.Y. Sept. 17, 2019) (collecting cases).  This ambiguity stems from the Second Circuit's decision in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998).  In *Tomka*, the Second Circuit held that the plaintiff stated a claim under § 296(6) when she alleged that "each of the individual defendants assaulted her and thereby created a hostile working environment," because each defendant had "actually participat[ed]" in the conduct giving rise to the claim.  66 F.3d at 1317.  Since *Tomka*, many courts have held that a plaintiff who alleges that an employer has "encouraged[,] condoned, or approved the discriminatory conduct of a sole employee, may rely on the same [employee's]

---

[9] The Court notes that aiding and abetting claims under the NYCHRL are typically brought under N.Y. Admin. Code § 8-107(6).  In Count Eight of her complaint, which alleges "NYC Aiding & Abetting Discrimination," Bonterre has instead cited to N.Y. Admin. Code § 8-107(19), which prohibits interference with protected rights. However, the Court assumes, as the parties appear to have done in their briefs, that Bonterre has asserted a claim for aiding and abetting discrimination, as opposed to one for interference with protected rights.

discriminatory conduct to prove, perhaps circularly, individual liability under the aiding and abetting provision of the NYSHRL." *Murtha*, 2019 WL 4450687, at \*18 (citing *Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 535 (E.D.N.Y. 2015)) (internal quotation marks omitted). Other courts, however, have abided by the narrower rule that an individual cannot aid or abet their own violation of NYSHRL, effectively limiting *Tomka* to situations where there are multiple individual defendants who have aided and abetted each other's violations. *Id.* (citing *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016)).

Because the Second Circuit has not revisited its reasoning in *Tomka* in a precedential opinion, the Court will adhere to the "majority" interpretation that a claim is stated if an employee participates in the alleged conduct, regardless of whether such participation also constitutes a primary violation of NYSHRL or whether other employees were involved. *See Boston v. Taconic Mgmt.*, No. 12 Civ. 4077 (ER), 2014 WL 4184751, at 2 n.9 (S.D.N.Y. Aug. 22, 2014) (applying *Tomka* and concluding that "assuming the alleged discrimination can be imputed to . . . Plaintiff's employer, [the individual defendant] can be held liable for aiding and abetting regardless of whether his actions form the basis for Taconic's liability in the first instance.") (citations omitted); *see also Johnson*, 82 F. Supp. 3d at 536 (plaintiff could state an aiding and abetting claim regardless of whether other employees contributed to the discrimination).[10]  Under this standard, Bonterre clearly states a claim.  Moreno's "actual participation" in the broomstick incident is self-evident.  Moreover, Bonterre has also adequately alleged that Weiss actually participated in the incident, based on the fact that he was present for

---

[10] Defendants cite *Boonmalert v. City of New York*, in which the Second Circuit stated, in a summary order, that "an individual cannot aid and abet their own discriminatory conduct" under § 206(6).  *See* 721 F.App'x at 34 (citing *Strauss v. N.Y. State Dep't of Educ.*, 26 A.D.3d 67 (3d Dep't 2005)).  However, *Boonmalert* nowhere cites *Tomka*, and also rests on the separate ground that there was no actionable primary violation of the NYSHRL or NYCHRL.  The Court finds it unlikely that, if the Second Circuit meant to overturn or clarify the reasoning of *Tomka*, it would have done so in a non-precedential opinion that does not even mention it.

it and took no remedial action.  *See Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d

376, 384 (S.D.N.Y. 1999) ("[T]he case law establishes beyond cavil that a supervisor's failure to

take adequate remedial measures [in response to a NYSHRL violation] can rise to the level of

'actual participation' under HRL § 296(6).").

      However, the Court also notes that Bonterre's allegations appear to state a claim under

the narrower interpretation of *Tomka*.  In *Tomka*, the Plaintiff alleged that she had been sexually

assaulted by three individuals, all as part of the same extended incident.  66 F.3d at 1301–02.

While it found that each defendant "actually participate[d]" in the sexual assaults and thereby

contributed to the creation of a hostile work environment, the Second Circuit did not clarify

whether its decision rested on the "circular" theory discussed above, or whether the defendants

had simply aided and abetted each other's primary acts.  *See Tully-Boone v. N. Shore-Long*

*Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008) (discussing this ambiguity).

Here, however, Defendants have asserted that both Weiss and Moreno are "the alleged principal

actors" for the broomstick incident.  *See* Doc. 30 at 9.  Bonterre therefore also states a claim

based on the theory that Weiss and Moreno aided and abetted each other's contributions to the

hostile work environment.  *Cf. Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019)

(plaintiffs may state a claim for aiding and abetting under § 296(6) by alleging a primary

violation committed by another employee, by the business itself, or by alleging that an individual

"primarily directed the discriminatory conduct in concert with other employees or an employer")

(citations omitted).

      Finally, because Bonterre states a claim for aiding and abetting under the NYSHRL, she

also states such a claim under NYCHRL.  *See Malena*, 886 F. Supp. 2d at 367.

### iii.    Moreno's Individual Liability Under NYSHRL and NYCHRL

Defendants finally argue that Moreno cannot be liable as an "employer" under NYSHRL and NYCHRL.  As discussed above, Bonterre has stated a claim against Moreno for aiding and abetting under § 296(6) and the NYCHRL, both of which apply to any "person" as opposed to any "employer,"—but has failed to state a retaliation claim against any defendant.  Thus, as a practical matter, Defendants' "employer" argument is relevant only to Moreno's liability under Counts Three and Six, which allege a hostile work environment under the NYSHRL and NYCHRL, respectively, and Count Nine, which alleges supervisory liability under the NYCHRL.

The term "employer" is not explicitly defined in the NYSHRL.  However, courts have found that "common-law principles . . . determine who may be liable as an employer . . . with greatest emphasis placed on the alleged employer's power 'to order and control' the employee in his or her performance of work."  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (2017).  Bonterre did not respond to Defendants' argument that Moreno is not an "employer" under the NYSHRL, and has alleged no facts to support the inference that Moreno exercised any control or supervision over her in the workplace.  Indeed, her designation of him as an "employee" and Weiss as her "supervisor" in the Complaint undermines such an inference.  Count Three is therefore dismissed as to Moreno.  For substantially the same reasons, allegations against Moreno under Count Nine, which alleges supervisory liability under NYCHRL § 8-107(13), must be dismissed.  *See Doe v. Bloomberg L.P.*, 36 N.Y.3d 450, 460–61 (2021) (noting that § 8-107(13) applies when an employee exercises supervisory responsibility, but does not extend to employees without such responsibility).[11]

---

[11] These claims should also be dismissed for the independent reason that Bonterre did not address them in her opposition brief. *See Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and

However, regarding Count Six, the NYCHRL hostile work environment claim, Bonterre brings her claims under N.Y. Admin. Code § 8-107(1)(a), the plain text of which prohibits "[a]n employer *or an employee* or agent thereof" from engaging in discrimination.  *See* N.Y. Admin. Code § 8-107(1)(a) (emphasis added).  Thus, even assuming *arguendo* that Moreno is not an "employer" under the NYCHRL, he could still be liable as an "employee."  *See Doe*, 36 N.Y.3d at 459 (2021) ("The City HRL specifically imposes primary liability on employees and agents for some discriminatory acts.") (citing § 8-107[1](a)).  The Court therefore declines to dismiss Count Six as to Moreno.

## IV.    CONCLUSION

For the reasons discussed, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part.  The motion is granted as to:

- Count One as to the individual defendants only;

- Counts Two, Four, Seven, Ten and Eleven against all defendants;

- Counts Three and Nine as to Moreno;

The motion is denied as to:

- Count One against the City and DSNY;

- Counts Three and Nine against the City, DSNY and Weiss;

- Counts Five, Six and Eight against all Defendants.

The parties are directed to appear for a teleconference on October 12, 2021 at 4:30 p.m. The parties are directed to dial (877) 411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 27.

---

generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

It is SO ORDERED.

Dated:   September 7, 2021
         New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.